IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

PAUL M. SLONE,

      Plaintiff,

v.                                CASE NO. 2:07-cv-00667

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the court on cross-motions for judgment on the pleadings. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Paul M. Slone (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on July 12, 2004 and July 28, 2004, alleging disability as of August 1, 2003, due to back injury and knee swelling. (Tr. at 19, 134-36, 140-45.) The claims were denied initially and upon reconsideration. (Tr. at 19, 130-32.) On May 2, 2005, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 133.) The hearing was

held on September 11, 2006, before the Honorable Andrew J. Chwalibog. (Tr. at 26, 307-30.)  By decision dated November 28, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 19-26.)  The ALJ's decision became the final decision of the Commissioner on September 13, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 7-9.)  On October 24, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2002).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is

2

not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2002).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant

3

satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 21.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease of the lumbar spine and obesity. (Tr. at 22.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 22-23.) The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations. (Tr. at 23-24.) As a result, Claimant cannot return to his past relevant work. (Tr. at 24.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as dining room attendant, hand packer, packing/machine tender, assembler, and bench work laborer, which exist in significant numbers in the national economy. (Tr. at 25.) On this basis, benefits were denied. (Tr. at 26.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

4

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was 42 years old at the time of the administrative hearing. (Tr. at 311.) He has a seventh grade education and no special education classes. (Tr. at 312.) In the past, he worked as a masonry laborer and labor foreman for fourteen years with Steve Byerly Masonry. (Tr. at 61, 313, 323.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it below.

Physical Evidence

An office form dated June 30, 1998, from Charles J. Kistler, D.O. notes Claimant had an occupational injury: "724.3 Sciatica... spasms, burning, and pain in low back and buttocks." (Tr. at 299.)

5

On July 24, 1998, Thomas D. Skeels, D.O., Orthopedic and Neurological Consultants, Inc., provided an electromyographic [EMG] examination of Claimant at the referral of Dr. Kistler.   Dr. Skeels' impression:  "Normal EMG/nerve conduction study of L. lower limbs and lumbar paraspinals."  (Tr. at 87.)

On July 27, 1998, James A. Thesing, D.O., Doctor's Hospitals Department of Radiology and Nuclear Medicine, evaluated an MRI of the Claimant's lumbar spine at the referral of Dr. Kistler.   Dr. Thesing's impression:  "Degenerative disc change is present at L4-5 with focal protrusion laterally on the right producing posterolateral displacement and effacement of the exited L4 root." (Tr. at 88.)

On April 8, 1999, Dan Long, M.D., radiologist, reviewed Claimant's x-rays of that date.   He found:

Thoracic Spine Series:  Twelve thoracic type vertebral bodies are found in a minimal dextroscoliotic curvature. The pedicles are intact.   There are mild degenerative disc changes within the lower thoracic spine manifested by endplate osteophytes.

Lumbar Spine Series:  Five lumbar type vertebral bodies are found in normal alignment.   The pedicles are intact. The vertebral body heights and disc spaces are well maintained.   The facets demonstrate mild eburnation at L4-L5 and L5-S1, bilaterally, compatible with degenerative joint changes.

Oblique Views:   No evidence of pars interarticularis defects. There is re-demonstration of degenerative joint changes at L4-L5 and L5-S1, bilaterally.

Flex/Ext:   No listhesis with positional change.   The facets remain in normal apposition.

> AP Pelvis Upright:  No pelvic tilt.  Both hips appear
> normal.  There is mild eburnation of bilateral sacroiliac
> joints indicative of degenerative changes. No diastasis.

(Tr. at 126.)

On October 13, 1999, Daryl R. Sybert, D.O., Orthopedic Spine Surgeon, evaluated Claimant at the referral of Dr. Kistler.  He assessed Claimant as having "[c]hronic low back pain and disability with history of industrial injury 6/3/97."  Dr. Sybert made the following recommendation:

> I have discussed the above findings today with Paul.  I
> have described to him the fact that he needs to be re-
> educated into a light job classification and placed back
> to gainful employment.  At this point because of his low
> education level, he is not a candidate, it appears, to do
> this.   He returns to my office at this point with
> inappropriate goals in regards to surgery outcomes and
> expectations.  I have discussed with him and his wife,
> with a green booklet of spinal pathology and treatment
> options, that spinal fusion will not return him to a
> heavy lifting occupation nor would it relieve his
> symptoms completely.  He is not interested in any
> surgical endeavor unless it will relieve his symptoms
> completely.  At this point I do believe pain management
> would offer him reasonable treatment options and perhaps
> realistic expectations in the long run.  If he gets to
> the point where he deteriorates and a 60-80% reasonable
> successful pain relief and outcome looks good to him,
> then I would be happy to reevaluate him.  At this point
> he would require provocative lumbar discogram before
> considering any fusion at the L4-5 level.

(Tr. at 90.)

On June 9, 2000, Robert A. Dixon, D.O., Board certified in Neurosurgery, evaluated Claimant at the referral of Dr. Kistler. He assessed Claimant as follows:

> Impression:
> 1.   Myofascial syndrome lumbar spine (846.0).

7

2.   Disk protrusion at L4-5 (722.10).
3.   Mechanical instability L4-5 resulting in or associated with pre-existing degenerative disk disease.
Recommendations:   He is now having to take Vicodin. Prior to that he was taking Ultram, and prior to that he was using over-the-counter medications.   He has been unable to return to gainful employment.   In this setting, it certainly seems reasonable to pursue further workup, or resign this man to a disability.   It is unlikely due to the longevity of his symptoms that he will return to gainful employment and extremely unlikely that he will return to a heavy laboring occupation.   He has only a ninth grade education and vocational retraining will be limited.

In light of the above, I have discussed with him proceeding with a lumbar discogram as a provocation evaluation for discogenic origin of pain at the L4-5 segment.   This would include an injection at L3-4 for a stopping point and control, and possibly L5-S1 if need be.   His MRI study is going on two years of age.   In light of this, a repeat MRI study is indicated to evaluate the local diskal anatomy including changes at the L4-5 segment.   He also should undergo AP, lateral and flexion/extension views of the lumbar spine.   I have completed a C9 to obtain authorization for all three of these studies.   Further recommendations are pending completion of the above.

(Tr. at 92-93.)

On September 25, 2000, an unnamed evaluator with U. S. Evaluations, Inc., provided an evaluation to the Ohio Bureau of Workers' Compensation.   The evaluation states the claimant injured his back on June 3, 1997, while pulling an I-beam at work.   (Tr. at 243.)   The evaluator found that Claimant had reached maximum medical improvement for conservative treatment.   The evaluator found that vocational rehabilitation might be appropriate but noted that with Claimant's limited education would severely limit him.

(Tr. at 245.)

On August 13, 2001, Dr. Kistler reported Claimant's diagnoses as: herniated nucleus pulposus in the lumbar spine, sciatica, lumbosacral sprain and strain, gastritis with reflux, and ulcer disease. He stated Claimant's current medications were Lortab, Nolamine for sinuses, and Prevacid for stomach. He concluded: "The patient is currently, and has been, permanently and totally disabled and will remain so for the remainder of his life... The patient suffers from major depression. His last examination was 1/30/2001. His first examination in our office was 1/8/1998." (Tr. at 125.)

On September 7, 2001, Eli Rubenstein, M.D. reviewed a three view x-ray of Claimant's lumbar spine. He found: "There is normal alignment of the lumbar spine. There is no fracture or dislocation. The lumbar interspaces are regular. There is no compression or appendicular defect. The sacroiliac joints are normal. Impression: Normal lumbar spine." (Tr. at 97.)

On September 7, 2001, Martin Fritzhand, M.D., evaluated Claimant for the Disability Determination Division. Dr. Fritzhand opined:

> Impression:
> 1.  Chronic low back pain
> 2.  Chronic pain, right knee
> 3.  Exogenous obesity
> In summary, this is an obese middle-aged man who injured the low back four years ago. Low back pain has remained refractory to medical management since then. The pain has especially increased in severity during the past five

9

months.  The patient also has ongoing pain involving the
right knee.  The patient ambulates with a slow nonlimping
gait and had but slight difficulty forward bending at the
waist.  Range of motion studies are good.  There are no
joint abnormalities as heat, swelling and capsule
thickening are absent.  There is no evidence of nerve
root damage as all deep tendon reflexes are brisk, and
there is no evidence of muscle atrophy.  The right hand
is dominant, and grasp strength and manipulative ability
are well-preserved bilaterally.  Obesity does not
contribute to symptoms.  Based on the findings of this
examination, the patient appears capable of performing a
moderate degree of ambulation, standing, bending,
stooping and lifting heavy objects.

(Tr. at 96.)

On November 16, 2001, a State agency medical source completed
a Physical Residual Functional Capacity Assessment and opined that
Claimant could perform medium work with the ability to frequently
climb ramp/stairs, climb ladder/rope/scaffolds, balance, kneel, and
crawl and occasionally stoop and crouch.  The evaluator found no
manipulative, visual, communicative or environmental limitations.
(Tr. at 117-20.)  The evaluator, Maria P. Gongbalay, M.D., noted:
"The claimant's attending physician, Dr. Kistler said that the
claimant is completely disabled.  He does not appear to be
completely disabled by the objective evidence in file." (Tr. at
121.)

On March 21, 2002, Gary E. DeMuth, M.D. reviewed Dr.
Gongbalay's assessment, and affirmed it.  (Tr. at 121.)

On September 21, 2004, Mark V. Burns, M.D., Story Consulting
Services, Inc., evaluated Claimant for alleged "back injury, disks
L1, L2, L3 and L4 with radiation to the knees." (Tr. at 246.)  Dr.

10

Burns made these conclusions:

DIAGNOSTIC STUDIES:
1. Left knee and right knee films were obtained. Results are as follows: There was no evidence of soft tissue swelling; no bony abnormalities were noted; no subluxations or dislocations appreciated. The distal tibia, proximal femur, and patella are all intact along with the proximal fibula. No evidence of injury. No evidence of arthritic changes appreciated.
Impression - normal right and left knee film.
2. Lumbosacral spine films were performed in the AP and lateral views. Results are as follows: No evidence of soft tissue swelling; no bony abnormalities notes; no subluxations or dislocations appreciated. Disk spaces appear to be within normal limits. No evidence of acute injury or trauma.
Impression - Normal LS spine film.

SUMMARY: The claimant is a 40-year old white gentleman who states that he has had low back pain for 7 years. He claims he was working construction when he used his neck for leverage while lifting heavy pipe. He states he began having pain in his lower back the following day and has followed up with his primary care physician where he has undergone physical therapy. He has also had an MRI. He states the MRI revealed bulging disks in the L4/L5 disk interspace along with degenerative disk disease in L1-L3. He states that he will continue to follow up with his primary care physician.

MEDICAL SOURCE STATEMENT: Based on the medical findings, it would appear that the claimant has the ability to perform activities involving sitting, standing, moving about, lifting, carrying, handling objects, hearing, seeking, speaking, and traveling. His physical examination was within normal limits. His orthopedic examination was also within normal limits. The claimant denies any symptoms of chest pain. He has normal gait and station without evidence of motor dysfunction, sensory loss, or reflex abnormalities. He does not use a cane or an assistive device for ambulation. He has the ability to hear and understand normal conversational speech. He has normal gross manipulation and grip strength.

(Tr. at 249-50.)

11

On October 11, 2004, a State agency medical source partially completed a Physical Residual Functional Capacity Assessment. Although no boxes were checked on the form regarding Claimant's limitations, he wrote the following comments:  "...complains pain even with meds.  Very minimally credible.  Medical evidence does not coincide (sic, with) the pain allegations at any level.  He is obese.  Uses no cane...shows no significant limits." (Tr. at 256-57.)

On April 11, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work with the ability to frequently climb ramp/stairs, stoop, kneel, crouch and crawl and occasionally climb ladder/rope/scaffolds and balance.  The evaluator found no manipulative, visual, or communicative limitations and the only environmental limitations were to avoid concentrated exposure to extreme cold, vibration, and hazards.  (Tr. at 264-71.)  The evaluator, Amy Wirts, M.D., noted:

> Claimant is obese with a BMI 37.  Claimant has degenerative arthritis of L4-5 with disk protrusion L4/5/ Treatment for pain includes pain clinic with injections, physical therapy, chiropractic treatments, Lorcet and Naprosyn.  Claimant is partially credible and partially supported by evidence in file.  Severity of allegations and limitations of ADLs [activities of daily living] are not well supported.  His range of motion and x-rays are normal.  His EMG [electromyography] of his left lower extremity and lumbar paraspinals are normal.  RFC [residual functional capacity] is reduced to medium based on pain and MRI [magnetic resonance imaging] findings.

(Tr. at 271.)

12

On July 22, 2005, Claimant's representative provided a "Medical Assessment of Ability to do Work-related Activities (physical)" form dated June 23, 2005 from Charles J. Kistler, D.O. Dr. Kistler indicated Claimant had fair to poor abilities in making occupational, performance, and personal/social adjustments. He stated Claimant was limited to lifting/carrying ten pounds, standing/walking for one hour in an eight-hour work day, sitting without interruption for 15 minutes, occasionally could climb, but could never balance, stoop, crouch, kneel, or crawl. He found that Claimant's pushing/pulling ability was affected by the impairment but not Claimant's reaching, handling, feeling, seeing, hearing, or speaking. His only environmental restrictions were heights and moving machinery. He checked "constantly" when responding to Claimant's pain interfering with attention and concentration needed to perform even simple work tasks. He noted that Claimant would need unscheduled breaks in order to lie down or sit quietly during an eight-hour working day as a result of his impairments. He further opined that Claimant would likely be absent more than four days per month due to his impairments. (Tr. at 286-93.) A prescription pad note naming Claimant, signed by Dr. Kistler, and dated December 29, 2004, states: "The above named patient is 100% disabled due to Dx [diagnosis]: sp/st [sprain/strain] lumbar, sp/st dorsal." (Tr. at 297.)

13

Psychological Evidence

On October 4, 2001, Beth-Anne Blue, Ph.D. (letterhead states T. Rodney Swearingen, Ph.D.), licensed psychologist, completed a psychological evaluation of Claimant. Dr. Blue found Claimant was able to relate to others adequately and had no significant problems with attention, concentration, persistence or pace. She found Claimant was mildly impaired in his ability to deal with stress and moderately impaired in his ability to follow instructions, both due to low cognitive functioning. (Tr. at 102-07.) Dr. Blue concluded:

> Axis I: 307.89 Pain disorder associated with both psychological factors and a general medical condition.
> Axis II: V71.09 No diagnosis.
> Axis III: Knee problems, deteriorating discs in back, ulcer ... Current GAF: 65. Highest GAF past year: 69...
> His cognitive functioning appears below average, but further testing would be needed to make a diagnosis of Borderline Intellectual Functioning.

(Tr. at 106.)

On November 15, 2001, a State agency medical source completed a Psychiatric Review Technique form and opined that an RFC [residual functional capacity] assessment was necessary due to 12.05 mental retardation and 12.07 somatoform disorders. The evaluator found Claimant's limitations regarding restriction of activities of daily living and difficulties in maintaining social functioning were mild and that limitations in maintaining concentration, persistence, or pace were moderate. (Tr. at 108-12.)

On November 15, 2001, a State agency medical source completed

a Mental Residual functional capacity assessment form and opined Claimant was not significantly limited in fifteen areas and moderately limited in five areas. (Tr. at 113-114.)  The evaluator, Cindy Lou Matyi, Ph.D. concluded:

> Claimant alleges depression.  He does suffer from a pain disorder, and borderline intellectual functioning. He is able to follow instructions and complete tasks.  He has no significant problems relating to others.  He is not suicidal.   He  can  handle  work  related  stress. Concentration is moderately limited due to cognitive problems.  He can care for his personal hygiene.  He has some appetite and sleeping problems.  Energy level is poor but he still completes tasks.  He has no crying spells.  Memory is fair.  He has limited insight. Ability to maintain attention to do simple tasks is not impaired.  Claimant can comprehend, remember, and carry out simple tasks, instructions, make simple decisions, relate adequately to others, and adapt to a setting in which duties are routine and predictable.

(Tr. at 115.)

Robelyn S. Marlow, Ph.D. later reviewed and affirmed Dr. Matyi's assessment on March 20, 2002.  (Tr. at 115.)

On December 8, 2004, Donna J. Cooke, M.A., West Virginia Disability  Determination  Service,  completed  a  disability determination evaluation of Claimant.  Ms. Cooke noted Claimant had a driving under influence ("DUI") charge in 1998 which resulted in weekend  incarceration  and  an  arrest  in  1983  for  marijuana possession, which resulted in two days incarceration.  (Tr. at 260-61.)  Ms. Cooke found claimant was uncooperative during testing and did not put forth a good effort, resulting in invalid psychological test results, WAIS-III test scores, and WRAT-3 test scores.  She

also noted Claimant "recalled and understood directions with little difficulty." (Tr. at 262.)  She concluded:

> DIAGNOSTIC IMPRESSION:
> Axis I:   (300.00) Anxiety Disorder, NOS [not otherwise specified].
> Axis II:  (V71.09) No Diagnosis.
> Axis III: History of occupational injury; history of chronic pain...
> SOCIAL FUNCTIONING:  Based on the claimant's interaction with this examiner, mildly deficient.  Based on claimant's ability to perform activities of daily living, mildly deficient.
> PERSISTENCE: Based on the claimant's ability to stay on task, mildly deficient.  Based on claimant's participation during the interview, mildly deficient.
> PACE:  The claimant's pace during testing was mildly deficient.
> CAPABILITY:  It is felt that the claimant would be capable of managing personal benefits independently.

(Tr. at 262-63.)

On December 29, 2004, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's anxiety impairment was not severe.  The evaluator, Debra L. Lilly, Ph.D., found that Claimant had only mild limitations of restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation.  Dr. Lilly further found that the evidence does not establish the presence of "C" criteria.  (Tr. at 272-85.)   Dr. Lilly noted:

> The claimant did not allege any mental impairments.  The Claims Rep at his District Office stated on his 3368 that he need (sic) help from his wife in answering questions.  His wife also states that he can not read and can only right (sic) his name.  The claimant also alleges in his ADL [activities of daily living] that he can not read.

16

He has a prior file in which an ALJ decision was dismissed due to his failure to appear for his hearing. The claimant has a 9th grade education but was in regular classes.  The claimant's physical RFC was non-severe... No current mental health treatment.
ADL's: Has some problems taking care of personal need due to pain, drives short distances, watches TV, sometimes goes to church, to the park and to the store, has problems following instructions and concentrating due to his pain.
CE [credibility evaluation] - Claimant not motivated for testing.  He concentration was mildly impaired.  He denied most activities beyond attending church and watching TV.  The claimant has been a block layer.  This vocation requires that one be able to use various tools.  He has several years at SGA [substantial gainful activity].  His perceived intellectual deficits in the past evaluation is likely the result of cultural differences between his being raised in a remote area of West Virginia and being evaluated in Ohio.  No prior testing occurred, and as identified by that evaluator, no adaptive deficits beyond his assertion that he cannot read or write are apparent.  The evidence does not reflect the claimant has severe mental impairments from a mental disorder.  He is considered to be only partially credible.  Although he may perceive himself to have limited concentration, he is able to watch TV, attend church services, and his evaluation reflected only mild deficits in concentration.

(Tr. at 284.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to properly evaluate Claimant's testimonial credibility under the Craig v. Chater, 76 F.2d 585, 594 (4th Cir. 1996) two-step methodology.  (Pl.'s Br. at 9-11.)  Claimant further asserts that this matter should be remanded to the Commissioner pursuant to the sixth sentence of 42 U.S.C. § 405(g) for consideration of new and

material evidence showing Claimant's illiteracy.  (Pl.'s Br. at 12-14.)

The Commissioner argues that the ALJ's findings that the Claimant's subjective complaints were not totally credible was in accordance with the procedures set forth in 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p and was supported by substantial evidence.  The Commissioner further asserts that the Claimant's evidence submitted does not merit remand pursuant to the sixth sentence of 42 U.S.C. § 405(g), as it is not material or new evidence, and good cause has not been shown for failure to submit it during the administrative proceedings. (Tr. at 14-20.)

<u>Credibility</u>

Claimant first argues that the ALJ failed to properly evaluate Claimant's testimonial credibility under the <u>Craig v. Chater</u>, 76 F.2d 585, 594 (4th Cir. 1996) two-step methodology.  The ALJ did not make an explicit finding whether Claimant suffered from a medically determinable impairment that could reasonably cause the pain he alleged.  Instead, the ALJ proceeded directly to considering the credibility of Claimant's subjective allegations of pain.  (Pl.'s Br. at 9-11.)

The Commissioner argues that the ALJ explicitly found Claimant's subjective complaints were of only "fair" credibility and that the ALJ explicitly made a threshold determination Claimant suffered from degenerative disc disease and obesity.  The

18

Commissioner cites Social Security Ruling 96-7p and argues that a favorable finding at the second step of the sequential evaluation process implicitly resolves the threshold pain analysis determination in Claimant's favor.  (Def.'s Br. at 8-14.)  The Commissioner states that there is no rule that "the ALJ must invoke the name of the <u>Craig</u> case in order to perform a proper two part pain analysis...Overall, the facts of this case reveal that the ALJ explicitly performed both parts of the pain analysis even though he did not mention the <u>Craig</u> case by name." (Def.'s Br. at  9.) The Commissioner further asserts that Claimant "has not directly challenged the substance of the ALJ's adverse credibility determination (Pl.'s Br. at  9-11).  Instead, he has simply alleged a technical defect which allegedly occurred during the process of reaching that well supported determination."  (Def.'s Br. at  11.)

In a reply brief, Claimant asserts that the Commissioner failed to distinguish or even discuss published decisions which hold that the Commissioner is required to state explicitly whether the claimant suffers from a medically determinable impairment that could reasonably cause the pain he alleges and failed to quote any language from the ALJ decision that would satisfy the threshold finding required by <u>Craig</u>. (Pl.'s Reply Br. at  1-5.)

A two-step process is used to determine whether a claimant is disabled by pain.  First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected

to produce the pain alleged.   20 C.F.R. §§ 404.1529(b) and
416.929(b) (2006); SSR 96-7p, 1996 WL 374186 (July 2, 1996); see
also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such
an impairment is established, then the intensity and persistence of
the pain and the extent to which it affects a claimant's ability to
work must be evaluated.  Craig, 76 F.3d at 595.  When a claimant
proves the existence of a medical condition that could cause pain,
"the claimant's subjective complaints [of pain] must be considered
by the Secretary, and these complaints may not be rejected merely
because the severity of pain cannot be proved by objective medical
evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994).
Objective medical evidence of pain should be gathered and
considered, but the absence of such evidence is not determinative.
Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990).  A claimant's
symptoms, including pain, are considered to diminish his capacity
to work to the extent that alleged functional limitations are
reasonably consistent with objective medical and other evidence.
20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4)(2006).  Additionally,
the regulations provide that:

> [w]e will consider all of the evidence presented,
> including information about your prior work record, your
> statements about your symptoms, evidence submitted by
> your treating, examining, or consulting physician or
> psychologist, and observations by our employees and other
> persons. . . . Factors relevant to your symptoms, such
> as pain, which we will consider include:
>
> (i) Your daily activities;

(ii)  The  location,  duration,  frequency,  and intensity of your pain or other symptoms.

(iii) Precipitating and aggravating factors;

(iv)  The  type,  dosage,  effectiveness,  and  side effects  of  any  medication  you  take  or  have  taken  to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii)  Other  factors  concerning  your  functional limitations  and  restrictions  due  to  pain  or  other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3)(2006).

SSR 96-7p repeats the two-step regulatory provisions:

First,  the  adjudicator  must  consider  whether  there is  an  underlying  medically  determinable  physical  or mental impairment(s)--i.e., an impairment(s) that can be shown  by  medically  acceptable  clinical  and  laboratory diagnostic  techniques--that  could  reasonably  be  expected to  produce  the  individual's  pain  or  other  symptoms. * * * If  there  is  no  medically  determinable  physical  or mental  impairment(s),  or  if  there  is  a  medically determinable  physical  or  mental  impairment(s)  but  the impairment(s)  could  not  reasonably  be  expected  to  produce the  individual's  pain  or  other  symptoms,  the  symptoms cannot  be  found  to  affect  the  individual's  ability  to  do basic work activities.

Second,  once  an  underlying  physical  or  mental impairment(s)  that  could  reasonably  be  expected  to produce  the  individual's  pain  or  other  symptoms  has  been shown,  the  adjudicator  must  evaluate  the  intensity, persistence,  and  limiting  effects  of  the  individual's symptoms  to  determine  the  extent  to  which  the  symptoms limit  the  individual's  ability  to  do  basic  work activities.  For  this  purpose,  whenever  the  individual's statements  about  the  intensity,  persistence,  or

21

> functionally limiting effects of pain or other symptoms
> are not substantiated by objective medical evidence, the
> adjudicator must make a finding on the credibility of the
> individual's statements based on a consideration of the
> entire case record.

SSR 96-7p, 1996 WL 374186, at *2.   Significantly, SSR 96-7p
requires the adjudicator to engage in the credibility assessment as
early as step two in the sequential analysis; i.e., the ALJ must
consider the impact of the symptoms on a claimant's ability to
function along with the objective medical and other evidence in
determining whether the claimant's impairment is "severe" within
the meaning of the regulations.   A "severe" impairment is one which
significantly limits the physical or mental ability to do basic
work activities.   20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for
objective medical evidence of an underlying impairment capable of
causing the type of pain alleged, the ALJ is not to reject a
claimant's allegations solely because there is no objective medical
evidence of the pain itself.   Craig, 76 F.3d at 585, 594; SSR 96-
7p, 1996 WL 374186, at *2 ("the adjudicator must make a finding on
the credibility of the individual's statements based on a
consideration of the entire case record").   For example, the
allegations of a person who has a condition capable of causing pain
may not be rejected simply because there is no evidence of "reduced
joint motion, muscle spasms, deteriorating tissues [or] redness" to
corroborate the extent of the pain.   Craig, 76 F.3d at 595.

22

Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision.   The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

In his decision, the ALJ considered the evidence of record related to Claimant's impairments and concluded that while degenerative disc disease of the lumbar spine and obesity were severe impairments, he retained the functional capacity to perform medium work. (Tr. at 22-24.)   He reasoned that Claimant's complaints were inconsistent with the objective medical evidence and that Claimant's limitations had been correctly established in his residual functional capacity. (Tr. at 23-24.).   The ALJ found:

> The claimant alleges disability due to knee pain; however, there is no evidence of treatment for such a complaint... On September 21, 2004, examination of both knees was normal, as were bilateral knee x-rays (Exhibit B-2F).  Although the claimant is obese, the evidence does not establish limitation in knee range of motion, knee instability or laxity, or gait deficits (Exhibits 5F and B-2F).   The claimant does not have a severe knee impairment...

> The claimant takes Prevacid, likely for reflux disease (Exhibit B-7F).  This medication appears to control the claimant's symptoms very well, as there is no record of complaints related to reflux disease   within the treatment record (Id).   The record does not establish significant limitation of work-related function due to stomach problems.   This impairment is therefore not severe...

> The claimant was diagnosed with an anxiety disorder not

23

otherwise specified (Id). Mr. Sloan is able to care for his personal needs, clean, cook, shop, drive, use the telephone, and attend church (Exhibits 6F, B-5E, B-9E, B-13E, B-14E, B-15E, and B-16E.)  Overall, the treatment record shows the claimant's mood is stable and his symptoms are well controlled with his current medication. The claimant has admitted to a history of substance abuse, and he was noted to be uncooperative with testing. There are therefore no valid test scores with which to evaluate the veracity of the claimant's allegations he is illiterate.  Given the objective record, the undersigned finds the claimant, as a result of an unspecified anxiety disorder, experiences mild restriction of activities of daily living; mild difficulty maintaining social functioning; mild difficulty maintaining concentration, persistence, or pace; and has never experienced an episode of decompensation.  The claimant does not have a severe mental impairment...

The claimant has a history of low back pain associated with degenerative changes in the lumbar spine (Exhibits 2F, 3F, 4F, 10F, and B-7F).  Examination has also revealed obesity (Id).  These impairments are severe. (Tr. at 22.)

The claimant testified he has deteriorating discs in his lumbar spine and a pinched nerve.  He has pain in his lower back that radiates into his right leg.  The nerve pain causes him to pass out sometimes.  He wears a back brace most of the time.  He cannot wear the brace when he has trouble with his ulcer though.  He had physical therapy in 1997.  He takes medication that helps, but does not completely relieve his pain.  Surgery has been recommended.  Mr. Slone stated he takes medication for depression, but he has not been able to afford counseling.  The medication helps a lot.  He does not read or write well.  He received his driver's license through oral examination.  He attempted vocational rehabilitation in 1997, but he was not able to complete the classes.  The claimant testified he cares for his personal needs and goes to church every other Sunday.  He did recently get a medical card.

The medical evidence shows the claimant has a history of treatment for low back pain (Exhibits 1F, 2F, 3F, 4F, 10F, B-1F, and B-7F).  MRI of the lumbar spine taken in July 1998 showed (Tr. at 23) degenerative disc disease at the L4/L5 level with protrusion to the right displacing

and effacing the exiting L4 nerve root (Exhibit 2F). Examination in September 2001 revealed mildly decreased lumbar spine range of motion, diminished squat and straight leg raising, and obesity (Exhibit 5F). On January 17, 2002, the claimant was reported to have tenderness over the lumbar spine with limited range of motion (Exhibit 10F).

On September 21, 2004, the claimant was found obese, with full range of motion in the lumbar spine and extremities and full ability to squat (Exhibit B-2F). X-rays of the lumbar spine were normal.

In determining the claimant's residual functional capacity, I have considered and made reductions (sic) based upon the claimant's demeanor as a witness. The undersigned was able to observe the claimant while he testified, his demeanor, the way he answered the questions and all of the other factors that go into assessing a witness' credibility. Considering these factors, I find his credibility as a witness to be only fair and his demeanor during the hearing consistent with the limitations established in his residual functional capacity. The claimant's treatment has been extremely conservative since the alleged onset date and the notes show he has been maintained on the same pain medication without adjustment since at least January 2004 (Exhibit b-7F). The treatment record also shows the claimant's mood has been stable without reported complaints of depression or anxiety with current treatment. He has not been referred for psychological treatment, and, while the claimant testified he cannot afford counseling, there is no evidence to indicate he ever sought income-based treatment or was refused treatment for a lack of financial resources. Mr. Sloan further testified he received a medical card recently; yet, he expressed no intention of seeking further treatment for his back or alleged depression.

The claimant's treating physician has opined the claimant is totally disabled and unable to perform sustained work activity (Exhibits 10F and B-7F). No objective findings are given in support of these opinions beyond recitation of the 1998 MRI findings and limited lumbar spine range of motion. The overall record shows there have been no findings of neurological or strength deficit and general findings show the claimant has little to no restriction in lumbar spine range of motion absent some exacerbation

25

(Exhibits 5F, 10F, B-2F, and B-7F).   The record
furthermore shows the claimant's pain is well controlled
on his current medicinal regimen.   As the treating
physician's opinions are not supported by objective
medical findings and are inconsistent with the treatment
record, the undersigned has given the same little weight.

The state agency medical consultants opined the claimant
is capable of performing a range of medium work (Exhibits
9F and B-5F).   These assessments are consistent with the
overall medical record.   The same have therefore been
given great weight in determining the claimant's residual
functional capacity.

(Tr. at 22-24.)

The court finds that the ALJ's decision is not supported by

substantial evidence because the ALJ did not make the explicit

threshold finding required by Craig v. Chater, 76 F.3d 585, 594

(4th Cir. 1996) related to Claimant's subjective complaints.   In

Craig, our Court of Appeals stated that in evaluating pain and

other subjective symptoms, the Commissioner must utilize a two-

pronged test.   First, "there must be objective medical evidence

showing the existence of a medical impairment(s) which results from

anatomical, physiological, or psychological abnormalities and which

could reasonably be expected to produce the pain or other symptoms

alleged."   Id.   If that threshold requirement is satisfied, the

Commissioner must then evaluate "the intensity and persistence of

the claimant's pain, and the extent to which it affects [his]

ability to work ...."   Id. at 595.

In Bradley v. Barnhart, 463 F.Supp.2d 577, 582-83 (S.D.W.Va.

2006), Judge Copenhaver ruled that the ALJ erred by failing to

expressly determine whether objective medical evidence showed that claimant had a medical impairment which could reasonably be expected to produce the pain alleged - step one of the <u>Craig</u> process, before proceeding to an assessment of the credibility of the claimant's subjective claims of pain - step two of the <u>Craig</u> process: "It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability, must be evaluated."

In <u>Arnold v. Barnhart</u>, Civil Action No. 1:04-cv-00422 (S.D. W. Va. Sept. 29, 2005 Memorandum Opinion, Docket No. 18, pp. 14-15), Chief Judge Faber ruled that "the ALJ's failure to expressly reach a conclusion regarding the first prong of the pain disability test, the threshold question of whether a claimant has 'an underlying medical impairment that could reasonably be capable of causing the pain alleged,' constitutes a failure to apply the correct legal standard in determining that a claimant is not disabled by pain."

In the subject decision, although the ALJ determined that Claimant had the severe impairments of degenerative disc disease of the lumbar spine and obesity (Tr. at 22), the ALJ failed to explicitly find whether Claimant suffered from a medically determinable impairment that could reasonably cause the pain he alleged - the first step of the <u>Craig</u> analysis. Also, while the

ALJ considered some of the factors identified in the regulations at 20 C.F.R. § 404.1529(c)(3) and 416.929(c)(3)(2006), such as Claimant's daily activities, location of pain, treatment, and medications, he failed to adequately consider the duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors related to Claimant's pain, and other factors concerning Claimant's functional limitations and restrictions due to pain and other symptoms.  As such, the court is constrained to recommend remand pursuant to sentence four of 42 U.S.C. § 405(g).

Remand pursuant to sixth sentence of 42 U.S.C. § 405(g)

Claimant next argues that this matter should be remanded to the Commissioner pursuant to the sixth sentence of 42 U.S.C. § 405(g) for consideration of new and material evidence, an April 16, 2007 consultative psychological report, showing Claimant's illiteracy.  (Pl.'s Br. at 12-14.)

The court acknowledges the Commissioner's meritorious arguments that Claimant was aware of Ms. Cooke's invalid results and could have sought out or requested an additional psychological evaluation and that Claimant did not submit the report to the Appeals Council.  Also, it is arguable that the evidence would not have changed the ALJ's decision because the ALJ found Claimant could perform medium work, and a finding of illiteracy would not mandate a finding of disability.  The court has determined that remand is necessary; the evidence can be considered at further

administrative proceedings.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: March 24, 2009

Mary E. Stanley
United States Magistrate Judge